RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

AUSABLE RIVER TRADING POST, LLC,

                              *Plaintiff-Appellant*,

      *v.*

DOVETAIL SOLUTIONS, INC.; TAWAS AREA CHAMBER
OF COMMERCE,

                        *Defendants-Appellees*.

No. 18-1368

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:16-cv-11207—Thomas L. Ludington, District Judge.

Decided and Filed:  August 29, 2018

Before:  SUTTON, DONALD, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Ronald R. Tyler, TYLER & TYLER, P.C., East Tawas, Michigan, for Appellant. Robert G. Kamenec, TAWAS AREA CHAMBER OF COMMERCE, Bloomfield Hills, Michigan, for Appellee Tawas Area Chamber of Commerce.

─────────────────

## OPINION

─────────────────

SUTTON, Circuit Judge.  Every winter for the last sixty years or so, Tawas, Michigan has become the home of the "Perchville" festival, replete with a polar bear swim and a fishing contest.  The Tawas Area Chamber of Commerce organizes the annual February event and has registered the name Perchville as a trademark.  A local company—the AuSable River Trading Post—wants to make Perchville-branded tee-shirts, and sued the Chamber to invalidate its mark.

The district court declined.  Because "Perchville" is a distinctive term eligible for protection under the Lanham Act, we affirm.

I.

Tawas rests on the shores of Lake Huron, about an hour south (by car) from Alpena. Like many towns, it has a chamber of commerce.  The Tawas Area Chamber of Commerce has organized the Perchville festival for many decades.  In 2002, the organization decided to register "Perchville" as a trademark for apparel and other goods.  It has kept the registration ever since, with one exception.  The registration accidentally expired in 2013, after which the Chamber reapplied and obtained a new registration in February 2015.  While dues-paying members of the Chamber of Commerce may use the Perchville mark, non-members must pay a licensing fee to use it.

The Trading Post operates a two-part business.  It prints words or images onto goods that it sells wholesale to retailers, and it sells some merchandise in its own retail store.  In October 2015, the Trading Post's owner asked about using the Perchville mark.  After learning that the Trading Post would have to pay a $750 fee to use the mark, the owner decided to produce Perchville-branded tee-shirts without the Chamber's permission.

When the Chamber learned what was going on, it obtained a state court injunction against one of the Trading Post's employees.  The Trading Post in response filed this separate action in state court against the Chamber and its third-party management company, Dovetail Solutions, seeking a declaratory judgment invalidating the Perchville mark under federal law.  The Chamber removed the action to federal court.

The district court granted the Chamber's motion for summary judgment and concluded that the prior state court injunction against the Trading Post employee prevented his employer from relitigating the dispute.  On appeal, this court reversed, holding that the injunction against the employee did not apply to the Trading Post.  *See AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271 (6th Cir. 2017).

On remand, the district court granted summary judgment to the Chamber of Commerce, holding that "Perchville" is an inherently distinctive mark suitable for trademark protection. The court declined to exercise supplemental jurisdiction over the Trading Post's remaining state law claims and remanded them to state court. The Trading Post appealed.

II.

The Lanham Act protects trademarks, defined as "any word, name, symbol, or device, or any combination thereof" that a person uses "to identify and distinguish his or her goods" in the marketplace. 15 U.S.C. § 1127.

Case law refines all of this in several ways. On the unprotected side of things, a generic term, such as "light beer," or a purely descriptive word, such as "tasty," does not receive trademark protection. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992); 2 *McCarthy on Trademarks and Unfair Competition* §§ 11:18, 12:18 (5th ed. 2018). On the protected side of things, two types of distinctive marks receive protection: (1) inherently distinctive marks; and (2) descriptive marks that become distinctive when they become associated with a particular good over time. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–11 (2000); *Two Pesos*, 505 U.S. at 768–69.

Refining things further, case law divides inherently distinctive marks into three types: (1) arbitrary, (2) fanciful, and (3) suggestive. Arbitrary marks consist of real words that possess a meaning unrelated to the product. Think Camel cigarettes or Apple computers. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996). Fanciful marks are made-up words. Think Kodak film. *Id.* Suggestive marks are words or phrases that require "imagination and perception to determine the nature of the goods." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012) (quotation omitted). Think "Old Spice" products, which require a consumer to imagine how "old spices" smell. All three types of marks share this attribute: "[T]heir intrinsic nature serves to identify a particular source of a product." *Two Pesos*, 505 U.S. at 768.

We can illustrate these concepts by reference to trademarks with respect to places and events—the context of today's case. As a general rule, the Lanham Act makes it difficult to

trademark a geographic name, such as Manhattan, New York or Tawas, Michigan. The Act also makes it difficult to trademark purely descriptive terms, such as "Boston Beer." *Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 181 (1st Cir. 1993); *see also* 15 U.S.C. § 1052(e)(2) (prohibiting the registration of "primarily geographically descriptive" marks). But exceptions exist. A geographic name may acquire a secondary meaning among consumers that ties the name to a product. 2 *McCarthy* § 14:1. Think of "Poland Spring" bottled water, which in part comes from a spring in Poland, Maine but today refers to a single company's bottled water.

Events that occur in a specific place, such as a festival, differ. A festival might feature just the name of the area that hosts it, say a concert in Woodstock, New York in 1969, making it more difficult to trademark. But a festival also can bear an arbitrary, fanciful, or suggestive name. Think of the "Sundance Film Festival." When that happens, the festival's name earns trademark protection as an inherently distinctive mark.

An entity may register a mark with the U.S. Patent and Trademark Office. Once registered, a mark becomes presumptively valid, *see Wal-Mart*, 529 U.S. at 209, placing the burden of proof and production on anyone challenging the mark, *see Fuji Kogyo Co. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 683 (6th Cir. 2006).

The Trading Post has not rebutted that presumption. No matter how you slice it, the term "Perchville" is inherently distinctive. The name does not refer to a place. It serves only "to identify a particular" event, namely the annual winter festival in Tawas. *Two Pesos*, 505 U.S. at 768. The word almost certainly counts as fanciful, and at the very least is sufficiently suggestive to qualify as an inherently distinctive trademark.

"Perchville" bears a classic feature of a fanciful mark. Someone made up the name "for the sole purpose of serving as a trademark." 2 *McCarthy* § 11:5. According to a longtime Tawas-area journalist and business owner, Perchville's founders coined the name in 1949. The word bears no independent meaning. You cannot find "Perchville" in a dictionary or use it outside of Tawas in everyday conversation. Even the Trading Post admits that "Perchville" refers only to "the annual winter festival in Tawas." Appellant's Br. 11.

Unlike a typical fanciful word, Perchville is not nonsense and so also qualifies as a suggestive mark. The name "Perchville" consists of a mash-up of two otherwise real expressions: the fish "perch" plus the suffix "-ville," used to signify "the names of fictitious places or concepts denoting a particular quality." *The New Fowler's Modern English Usage* 826 (R.W. Burchfield ed., 3d rev. ed. 1998). The meaning of the innovation is not intuitive. Astute listeners, as the district court observed, might wonder whether the "term refers to something like a gathering of fishermen." R. 36 at 11. But even that requires "imagination and perception," making Perchville the type of inherently distinctive name that the Lanham Act protects. *Innovation Ventures*, 694 F.3d at 730.

The Trading Post advances four arguments for invalidating the Chamber's trademark. None works.

*First*, the Trading Post urges the Court to treat "Perchville" as a generic word because the public does not associate the name with the Chamber of Commerce but instead with the festival itself. But Congress amended the Lanham Act in 1984 to foreclose this kind of argument. By law, courts cannot deem a mark generic "solely because such mark is also used as a name of or to identify a unique product or service." 15 U.S.C. § 1064(3); *see* 2 *McCarthy* § 12:7. That "Perchville" refers to a unique festival does not downgrade an inherently distinctive mark to generic status.

It matters not that some Tawas residents have no idea that the Chamber organizes Perchville. Congress has instructed courts to ignore whether consumers can identify the parent company that owns a trademark or produces a product. *See* 15 U.S.C. § 1127 (defining trademarks as words used "to indicate the source of the goods, even if that source is unknown"); *see also* 1 *McCarthy* § 3:12; 2 *McCarthy* § 12:7.

*Second*, the Trading Post argues that "Perchville," like "trampoline" or "thermos," long ago entered the general lexicon among Tawas-area residents and became a generic term. The comparison is lukewarm at best. A thermos in modern parlance refers to a general class of containers for holding hot liquids produced by several companies. Perchville in local parlance

refers to a single event, "the annual winter festival in Tawas," that has one source.  Appellant's Br. 16.

*Third*, the Trading Post claims that "Perchville" is not fanciful because "its two root words" each can be "readily found in any dictionary, thus suggesting a city with a certain species of fish."  Appellant's Br. 15.  But by acknowledging that the festival "suggest[s]" an imaginative city, the Trading Post cedes too much ground.  That concession shows that the festival's name amounts to (at least) a suggestive mark, one of the three categories of inherently distinctive marks.

*Fourth*, the Trading Post argues that the Chamber abandoned the trademark or that laches prevents the Chamber from enforcing the mark against the Trading Post.  Not so in either case.

To prove abandonment, the Trading Post must show (among other things) that the Chamber "discontinued" using the mark "with intent not to resume such use," or that the mark has become a "generic name for the goods or services." 15 U.S.C. § 1127.  That the Chamber's registration lapsed does not prove abandonment because the Chamber quickly applied for renewal, confirming its continuing desire to maintain the trademark.  That the Chamber "allowed" others "to use the name 'Perchville'" does not prove abandonment either.  Appellant's Br. 22.  For one, mere use by others does not show that the Chamber "discontinued" its own use of the mark or that the name somehow became generic.  For another, the Chamber allows others to use the mark by licensing it for a fee and by selling Perchville buttons, which is the opposite of abandonment.  *See* 2 *McCarthy* § 18:46 ("Ownership rights in a trademark or service mark can be acquired *and maintained* through the use of the mark by a controlled licensee even when the first and only use of the mark was made, and is being made, by the licensee." (emphasis added)).

Courts apply laches only when a trademark owner sleeps on his rights to the detriment of another.  That did not happen.  The question is whether (1) the trademark owner knew about the infringement, (2) the owner unreasonably delayed challenging it, and (3) the delay hurt the infringer.  *See Audi AG v. D'Amato*, 469 F.3d 534, 545–46 (6th Cir. 2006).  The Trading Post comes up short on each point.  In 2015, the Trading Post absorbed another company that, it

claims, had previously produced Perchville tee-shirts. But the Trading Post offers no evidence that the Chamber knew of the other company's use. When the Chamber learned that the Trading Post planned to make Perchville tee-shirts, it asserted its rights. *See supra* and *infra*. That prompt assertion of rights hurt no one.

We affirm.